STRICKEN PURSUANT TO ORDER DATED 9/23/08 (DE#13)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| TYSON KEPLINGER, | ) |
| Petitioner, | ) ) ) |
| v. | ) CAUSE NO. 3:07-CV- 572 WL |
| SUPERINTENDENT, | ) ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Tyson Keplinger, a *pro se* prisoner, filed this *habeas corpus* petition to challenge a prison disciplinary proceeding. (Petition for Writ of Habeas Corpus, DE 1). The respondent has complied with the order to show cause (Response to order to Show Cause, DE 8) and submitted a supporting memorandum (Memorandum in Support of Response to Order to Show Cause, DE 9) with the state administrative record. Keplinger filed a traverse. (Traverse to Response to order to Show Cause, DE 10). This case is now ripe for ruling.

## FACTUAL SUMMARY

At issue is the Conduct Adjustment Board's ("CAB's") July 30, 2007, determination of Keplinger's guilt in case number WCC 07-07-0661 involving a Class A offense, unauthorized use of a controlled substance. As a result, sanctions imposed included demotion in credit class, loss of telephone privileges, and payment of $14.00 restitution for the drug screening test. (DE 9 1-2).

Sergeant Washington wrote the challenged conduct violation on July 22, 2007. It states:

> On 6-10-07, Offender Keplinger, Tyson #128194, provided a urine sample for drug screening. On 7-22-07 the results of this screening were received back at this facility. The reports show Offender Keplinger, Tyson #128194, tested POSITIVE for CANNABINOIDS Carboxy THC.

(DE 1 at 10).

Keplinger alleges that, previously, on June 10, 2007, he received a conduct violation for "possession or use of any controlled substance," a "Code 112." In that report, case number WCC 07-06-0211, Lieutenant Cain wrote that, as he started "to do a pat down" on Keplinger, another officer saw the petitioner "pass off two small plastic bags of green leafy substance" to offender Jason Villarreal. When Villarreal could not flush away the bags' contents, he threw the bags into the lap of a third offender from whom the second officer took them. (DE 1 at 9). After he received a "write up" based on this conduct, Keplinger says "I was escorted from the dorm, to a holding area where I was given a urinalysis." (DE 1 at 3).

The urinalysis report indicates AIT Laboratories received the specimen on June 13, 2007, "with a valid chain of custody intact." Five days later, June 18, 2007, the laboratory completed and certified its report. (DE 9-3). The record shows Sergeant Washington issued the unauthorized use conduct violation four days after the laboratory's report.

Keplinger signed a copy of use of controlled substance conduct violation on July 25, 2007, acknowledging he received it. (DE 9-2). The "Notice of Disciplinary Hearing"(screening report), which Keplinger signed, indicates the earliest hearing date for the July 22, 2007, alleged "possession or use of any unauthorized sub," is July 26, 2007. This document refers to case number WCC 07-07-0661, the unauthorized use conduct violation. (DE 9-4). On July 30, 2007, a three- member CAB panel held the hearing Keplinger contests. (DE 9-6). Keplinger unsuccessfully appealed the CAB's decision to the Superintendent (DE 9-7) and Final Reviewing Authority (DE 9-8).

## DISCUSSION

Keplinger has a liberty interest in earned good time and before it can be taken away for misconduct he is entitled to basic procedural protections. These minimal, due process requirements are met by: (1) prior written notice of the charges; (2) an opportunity to present evidence; (3) an impartial decision maker; (4) a written statement of the evidence supporting the disciplinary action and the reasons for it; and (5) "some evidence in the record" to support the finding of guilt. *See Wolff v. McDonnell*, 418 U.S. 539, 557 (1974).

Keplinger asserts four bases for relief: (1) case WCC 07-07-0661 for unauthorized use of a controlled substance violated IDOC policy requiring the dismissal of duplicate charges; (2) the conduct violation was untimely under IDOC[1] policy; (3) delay in testing evidence; and (4) CAB bias. (DE 1 at 2-5 and DE 10 at 3, 5).

Because the urinalysis report stemmed from the incident which gave rise to the June 10, 2007, conduct violation, Keplinger contends the CAB should have dismissed it as a "duplicate charge" in accordance with IDOC policy. Essentially, he maintains the June 10, 2007, and July 22, 2007, conduct violations are the same offense making the latter "a second report of conduct on the same day and same incident." (DE 1 at 3-4).

The IDOC policy, which Keplinger claims the CAB, violated provides:

> Dismiss duplicate charges when the reporting employee(s) files more than one report on a particular incident and duplication of charges are evident.

(DE 1 at 8).

However, a federal court is limited to deciding whether a conviction violated the

---

[1] Indiana Department of Corrections.

Constitution, laws, or treaties of the United States. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (citations omitted). Because this Court cannot grant a habeas corpus petition based on a violation of a state law or prison policy, it is irrelevant whether such laws or policies were violated in this case.

Keplinger insists this claim "covers double jeopardy within the disciplinary proceedings." (DE 10-2 at 5). Double jeopardy protections do not attach in prison disciplinary proceedings. *See Meeks v. McBride*, 81 F.3d 717, 722 (7th Cir.1996) ("[A]n acquittal in an earlier prison disciplinary hearing is no bar to a subsequent hearing to consider the very same charge."). Moreover, it is not evident the two conduct violations Keplinger received involve the proscribed multiple reports "on a particular incident." A Code 112, Class A offense, includes the "possession or use of any unauthorized substance." (DE 9 at 5). This language plainly includes the prosecution for the "possession of" (the act or fact of possessing) as well as the "use of"(to expend or consume) any unauthorized controlled substance.

The sergeant wrote conduct violation WCC 07-06-0211 on June 10, 2007, for Keplinger's possession of marijuana uncovered during a patdown search conducted that day. Test results of the urine sample Keplinger provided the same day later showed the presence of cannabinoids and carboxy. The results of that test formed the basis for WCC 07-06-0661, the July 22, 2007, conduct violation. It is possible to possess a controlled substance without using it. Proof Keplinger possessed marijuana does not rest upon the same evidence to establish he used it. Merely because the events underlying the conduct violations are related in time does not mean they are the same offense.

Keplinger also claims the conduct violation was untimely under IDOC policy. (DE 1 at 4). He notes the lieutenant issued the July 22, 2008, conduct violation for unauthorized use "twenty-five

4

working days, and thirty-five actual days" after the June 18, 2008, laboratory report. (DE 1 at 5).

The IDOC policy Keplinger relies upon requires the reporting employee to submit the conduct report for screening in sufficient time to permit the disciplinary hearing to be held "within (7) working days from the date of the incident or from the date that the employee first becomes aware of the alleged violation." (DE 9-9 at 4-5). Contrary to Keplinger's assertions, this policy does not require the conduct report to issue within 10 days from the event which instigates it. Furthermore, this claim suffers from the same defect as the first one discussed above; habeas relief is unavailable for an alleged violation of prison procedure.

Nevertheless, the record shows the sergeant who issued the conduct violation received the drug test results on July 22, 2007. Afterwards, at the July 25, 2007, screening, Keplinger acknowledged he received a copy of the conduct violation report. The disciplinary hearing took place on July 30, 2007, a Monday[2] and, in accordance with IDOC policy, within 7 working days after the sergeant learned of the test results. (DE 9-9 at 3, ¶ T).

Keplinger contends he did not receive a copy of the laboratory report until the day of the CAB hearing. When he examined the report, Keplinger says he observed it showed the laboratory did not get the sample until June 13, 2008, "approximately 72 hours past the time of collection." IDOC policy requires samples to be mailed within 24 hours from the time they are collected, he argues. Because he did not get the report sooner, Keplinger says he could not adequately prepare a defense.[3] (DE 9-7 at 2). But, he does not explain how the alleged delay affected his defense. The

---

[2]See Fed. R. Evid. 201 (a)-(b) (providing for judicial notice of adjudicative facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.").

[3]The respondent does not directly address this argument.

5

report of the disciplinary hearing shows Keplinger declared "I am prepared." The report reflects that he informed the CAB of the problems he perceived with the laboratory receiving the urine sample after the prescribed time limits. (DE 9-6 ). The hearing report does not indicate Keplinger sought a continuance. Since Keplinger expressed his concerns about the test to the CAB, it appears that receiving the laboratory report on the day of the hearing did not prejudice him.

In *McPherson v. McBride*, 188 F.3d 784 (7th Cir. 1999), the United States Court of Appeals for the Seventh Circuit explained:

> In reviewing a decision for some evidence, courts are not required to conduct an examination of the entire record, independently assess witness credibility, or weigh the evidence, but only determine whether the prison disciplinary board's decision to revoke good time credits has some factual basis.

*Id.*, at 786 (quotations marks and citation omitted).

The laboratory report provided sufficient evidence to support the CAB's determination of guilt.

Finally, Keplinger argues he was denied an impartial decision-maker.[4] (DE 1 at 4). But, Keplinger did not exhaust this claim. (DE 9-7). "[T]o exhaust a claim, and thus preserve it for collateral review under § 2254, a prisoner must present that legal theory to the Final Reviewing Authority . . . ." *Moffat v. Broyles*, 288 F. 3d 978, 982 (7th Cir. 2002). This claim has no merit because Keplinger does not allege any of the CAB members participated in the investigation or fact-finding related to the disciplinary proceedings. *Merritt v. De Los Santos*, 721 F. 2d 598, 601 (7th Cir. 1983) (deciding the right to an impartial decision-maker is violated when that individual is also

substantially involved in the investigation of the charges against the prisoner).

Therefore, the *habeas corpus* petition is **DENIED**.

**SO ORDERED**.

**ENTERED**: September 19 , 2008.

 s/William C. Lee  
William C. Lee, Judge,  
United States District Court
